**PUBLIC INFORMATION ACT**

COURTS AND JUDGES – STATUS OF RECORDS RELATED TO
    JUDICIAL EVALUATIONS

May 9, 1994

*Mr. George B. Riggin, Jr.*
*State Court Administrator*
*Administrative Office of the Courts*

You have requested our opinion whether certain records related to the evaluation of judges would be subject to public inspection under the Maryland Public Information Act. For the reasons stated below, we conclude that these materials would not be open to public inspection.

**I**

**Judicial Evaluation Program**

On May 9, 1991, the Subcommittee on Judicial Evaluations of the Judicial Administration Section Council of the Maryland State Bar Association issued its final report regarding a pilot program for the evaluation of judges. The subcommittee concluded that the pilot program had been a success and recommended that an on-going program of judicial evaluations be instituted.

Your letter indicates that Chief Judge Murphy has decided to accept this recommendation and initiate such a program. Under the plan, one-fourth of all of the judges in the State would be evaluated annually, so that all judges will have been evaluated once over a four-year cycle. You explain that "[d]ata for a judge's evaluation will be obtained from questionnaires provided to attorneys who have actually appeared before that judge in a contested proceeding. A project manager or service bureau, under contract with the Administrative Office of the Courts, will send the questionnaires, receive the responses, and enter the data ..." into a computer. After the data are assembled, an evaluation will be prepared for each judge. "That evaluation will be furnished only to the judge who is the subject of the evaluation and to Chief Judge Murphy, and, in Chief Judge Murphy's discretion, to his designee, for the purpose of

having the designee review the evaluation with the judge evaluated. The designee may be the administrative judge of the court, district, or circuit of the particular judge evaluated, or a retired or senior judge."

The questionnaire used in the pilot program for circuit court judges, for example, asked for an assessment of the judge's performance on 32 factors, including "knowledge of relevant substantive law," "ability to identify and analyze relevant issues," "courtesy to participants," and "absence of bias and prejudice ...." For each of these characteristics, the attorney would check a block for a rating ranging from "excellent" to "poor." The questionnaire also had space for open-ended comments.

The purpose of the evaluation project, you state in your letter, "is to improve the quality of judicial performance by enabling individual judges to see how they are perceived. The evaluation will also enable each judge to compare how that judge was evaluated on various aspects of judicial performance with a composite or profile of that judge's peers. When a cycle through the entire judiciary is repeated, a judge will also be able to compare that judge's current evaluation with the prior one."

As State Court Administrator, you will be the custodian of the completed questionnaires, the data assembled from them, and the evaluation reports themselves. You ask whether you would be able to maintain these records in confidence. If not, then the program will be difficult or impossible to conduct.

## II

### Application of Public Information Act

The starting point in analyzing any issue under the Public Information Act is the general entitlement of members of the public to government records: "Except as otherwise provided by law, a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." §10-613(a) of the State Government ("SG") Article, Maryland Code. *See also* SG §10-612.

The Public Information Act itself contains a number of provisions that "otherwise provid[e] by law" − that is, provisions that either authorize or require the custodian of records to deny

public inspection.  One of these is the exemption for "personnel records," SG §10-616(i):

>        (1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.

>        (2)  A custodian shall permit inspection by:

>                (i)   the person in interest; or

>                (ii)  an elected or appointed official who supervises the work of the individual.

The primary focus of this exemption is undoubtedly traditional personnel files of government employees.  *See, e.g.*, 65 *Opinions of the Attorney General* 365 (1980); 60 *Opinions of the Attorney General* 559 (1975).  But the protection afforded by the exemption is broader:  "The obvious purpose of this [exception] is to preserve the privacy of personal information about a public employee that is accumulated during his or her employment."  65 *Opinions of the Attorney General* at 367.  So, for example, in an opinion to you last year, we concluded that SG §10-616(i) prohibited the disclosure of certain records of complaints against employees in a clerk's office. 78 *Opinions of the Attorney General* 291 (1993).

As elected or appointed public officials, judges may not be "employees" in the conventional sense, but they are surely "individuals" about whom personal information of the kind commonly found in a "personnel record" is maintained.  Indeed, the evaluation program is designed to yield something close to a "performance rating" – an element of a "personnel record" explicitly identified in SG §10-616(i).  The point of the exercise is to enable each judge to ascertain areas of strong and weak performance, especially by comparison to a composite of the evaluations of other judges.

Hence, we conclude that the responses of lawyers on the questionnaires, which provide the raw data for the performance evaluation; the compiled data for each judge; and the evaluation reports themselves for each judge are exempt from disclosure under

SG §10-616(i).[1] Only the judge who is the subject of the evaluation and a judge "who supervises the work of the individual" are permitted access to these records.[2] However, members of the public will be entitled to composite data and other information that does not identify particular judges.

## III

### Conclusion

In summary, it is our opinion that materials related to the performance evaluation of individual judges are not subject to disclosure under the Public Information Act.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*

---

[1] In light of this conclusion, we need not consider the extent to which any of this information constitutes "an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit." SG §10-618(b). We also note that if the Court of Appeals were to adopt a rule establishing the confidentiality of the performance evaluation materials, that rule would itself preclude public inspection under the Public Information Act. *See* SG §10-615(1). The Court has adopted such a rule with respect to the materials of the Commission on Judicial Disabilities. *See* Rule 1227e.

[2] While a judge is not supervised in the conduct of matters that come before the judge, the Chief Judge of the Court of Appeals is "responsible for the administration of the courts of the State." Rule 1200a1. Moreover, "[e]ach circuit administrative judge shall be generally responsible for the administration of the several courts within his judicial circuit, pursuant to these Rules and subject to the direction of the Chief Judge of the Court of Appeals." Rule 1200c2(a). Thus, the limited disclosure of individual evaluations that your letter discusses would be permissible.